Dawyn R. Harrison, County Counsel (SBN: 173855)
Scott Kuhn, Assistant County Counsel, (SBN: 190517)
Dušan Pavlović, Senior Deputy County Counsel (SBN: 228509)
Caroline K. Castillo, Deputy County Counsel (SBN: 236987)
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-1811
Facsimile: (213) 626-7446

Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
Jenny L. Riggs (SBN: 204417)
jriggs@meyersnave.com
Catherine L. Carlisle (SBN: 298316)
ccarlisle@meyersnave.com
MEYERS NAVE
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Plaintiffs
THE PEOPLE OF THE STATE OF
CALIFORNIA and THE COUNTY OF
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, by and through Dawyn R. Harrison, County Counsel for the County of Los Angeles, and THE COUNTY OF LOS ANGELES,<br><br>   Plaintiffs,<br><br>   v.<br><br>CHIQUITA CANYON, LLC, a Delaware limited liability company; CHIQUITA CANYON, INC., a Delaware corporation; and WASTE CONNECTIONS US, INC., a Delaware corporation,<br><br>   Defendants. | Case No. 2:24-cv-10819<br><br>**COMPLAINT FOR:**<br><br>**1. Public Nuisance – Nuisance Per Se;**<br><br>**2. Public Nuisance;**<br><br>**3. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and**<br><br>**4. Violation of Los Angeles County Code**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

## __INTRODUCTION__

1.      For almost two years, a smoldering, smelly, chemical brew has been festering underground at the Chiquita Canyon Landfill (the "Landfill") in Castaic, California, releasing noxious odors into the air and severely impacting the quiet enjoyment of neighboring homes and businesses.  This Class III Landfill occupies 639 acres and is a mere 500 feet from the Val Verde residential community.  The area generating these odors and chemicals occupies more than 30 acres in the Landfill's northwest corner nearest this community.  But the reach of the noxious brew is broader, impacting the quiet enjoyment of numerous adjacent neighborhoods.  As this brew smolders, landfill gas temperatures and subsurface temperatures rise, releasing odors that severely and persistently impact the nearby neighborhoods of Val Verde, Hasley Canyon, Hasley Hills, North Bluffs, Hillcrest, Live Oak, Williams Ranch, Santa Clarita, Stevenson Ranch, and Valencia.

2.      Among other noxious odors and gases, the brew releases hydrogen sulfide and dimethyl sulfide into the air.  And when rain falls on the Landfill, water filters through the waste and the brew, drawing out chemicals to form enormous amounts of liquid leachate.  The increased pooled and flowing leachate resulting from the brew creates additional fumes and foul-smelling odors.

3.      As residents in the area began feeling the impacts of this brew, they reported effects such as headaches and nausea; eye, nose, throat, and skin irritations; dizziness; difficulty breathing; and even cardiac problems.  Residents have also reported being forced to remain indoors, keeping their doors and windows closed.  They have had to avoid using their yards or taking part in the outdoor activities that are a key feature of life in this scenic part of the County of Los Angeles.  Children are unable to play outside and residents cannot even indulge in the simple pleasures of an outdoor barbeque or playing ball with their children in their own backyards.

4.      To this day, residents continue to report the impacts from the fumes and odors.  Survey results just issued on December 10, 2024 showed that many residents

reported that they smell "very strong" or "strong" odors on a daily basis that prevent them from going outside and/or make them feel ill.  These odors last for hours at a time – in some cases for more than twelve hours – wreaking havoc on the quiet enjoyment of these residential communities and rendering many outdoor activities unbearable.  The odors continue to cause symptoms including headaches; eye, nose, and/or throat irritation; feelings of light-headedness and/or dizziness; coughing, wheezing, and/or difficulty breathing; nausea, vomiting, stomach pain, and/or diarrhea; chest tightness and palpitations; and skin irritations and/or rashes.  Residents also report that they suffer from fatigue, anxiety, irritability, difficulty sleeping, stress, and depression as a result of persistent exposure to the odors.

5.      In the face of these conditions, residents have sought out various state, federal and local agencies, seeking their help to stop the noxious fumes from impacting daily quality of life and the quiet enjoyment of their homes and businesses.  And the various agencies have responded.  They have investigated the Landfill and confirmed that the underground reaction there poses a persistent public health concern and creates a public nuisance.  They have issued hundreds of abatement orders, notices of violation, and mitigation orders to the Landfill's owners and operators – but to no avail.

6.      The owners and operators of the Landfill have failed to contain or halt this noxious reaction; have failed to protect residents from the terrible effects on local life and health; and have failed to develop a plan that actually fixes this problem or adequately mitigates the community impacts from it.  Indeed, the Landfill operators admit that the severe impacts on surrounding residential communities could continue for years even with implementation of their proposed remediation measures.

7.      In light of the public health concern caused by the underground heating and smoldering reaction at the Landfill (the "Noxious Reaction"), Plaintiffs the People of the State of California and the County of Los Angeles seek this Court's

intervention to order the Landfill owners and operators to contain and extinguish the Noxious Reaction; to order the Landfill owners and operators to stop noxious odors and gases from reaching any areas where people live, work, study, recreate, and conduct their other daily activities; to require the Landfill owners and operators to relocate nearby residents until the Noxious Reaction is stopped; to require additional remedial measures for homes and business less severely impacted; and to impose appropriate civil penalties allowed by law for the conduct that caused the current protracted environmental incident.

8.   Defendants CHIQUITA CANYON, LLC, CHIQUITA CANYON, INC., and WASTE CONNECTIONS US, INC., which own and operate the Landfill, caused, substantially contributed to, and/or permitted the Noxious Reaction to exist, and have failed to control or contain it.  As a result, it has continued to expand in size and intensity, and continues to affect daily life in the neighborhoods near the Landfill.

9.   Simply put, Defendants are not taking sufficient steps to control and extinguish the Noxious Reaction, which Defendants admit on their website "may continue for years."  An injunction is necessary to bring the Landfill into compliance with applicable laws and regulations, to protect the public health and welfare, to stop the public nuisance caused by the Noxious Reaction, and to offer the residents a safe environment at a relocated site until the nuisance is stopped.

## JURISDICTION/VENUE

10.   This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (b)(1) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District and because Defendants all reside in this District for purposes of 28 U.S.C. § 1391(c)(2).

# THE PARTIES

**A.     The County and the People of the State of California Are the Named Plaintiffs**

12.     At all times material to this action, Plaintiff THE COUNTY OF LOS ANGELES (the "COUNTY") was and now is a political subdivision of the State of California and a charter county organized and existing under the constitution and laws of the State of California.

13.     Plaintiff THE PEOPLE OF THE STATE OF CALIFORNIA (the "PEOPLE") brings this action by and through the Los Angeles County Office of the County Counsel, which acts on their behalf under the authority granted by California Code of Civil Procedure section 731 and California Civil Code section 3494, to abate a public nuisance pursuant to, inter alia, California Civil Code sections 3479 and 3480.  The Los Angeles County Office of the County Counsel further brings this action in the name of the PEOPLE under the authority granted by California Business and Professions Code section 17204, to enjoin any person who violates, or proposes to violate, the California Unfair Competition Law (California Business and Professions Code section 17200 et seq.), and to obtain mandatory civil penalties for each act of unfair competition.

**B.     Defendants Operate a Landfill**

14.     At all times material to this action, Defendant CHIQUITA CANYON, LLC was and now is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business located at 3 Waterway Square PL #110, The Woodlands, Texas 77380.  At all times material to this action, Defendant CHIQUITA CANYON, LLC maintained an office at 29201 Henry Mayo Dr., Castaic, California 91384, and did and now does conduct business in the County of Los Angeles, State of California.  At all times material to this action, Defendant CHIQUITA CANYON, LLC and its subsidiaries and

predecessors constructed, operated, and/or maintained the Landfill located at 29201 Henry Mayo Dr., Castaic, California 91384.

15.    At all times material to this action, Defendant CHIQUITA CANYON, INC. was and now is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 3 Waterway Square PL #110, The Woodlands, Texas 77380.  At all times material to this action, Defendant CHIQUITA CANYON, INC. did and now does conduct business in the County of Los Angeles, State of California.  At all times material to this action, Defendant CHIQUITA CANYON, INC. and its subsidiaries and predecessors constructed, operated, and/or maintained the Landfill located at 29201 Henry Mayo Dr., Castaic, California 91384.

16.    At all times material to this action, Defendant WASTE CONNECTIONS US, INC. was and now is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 3 Waterway Square PL #110, The Woodlands, Texas 77380.  At all times material to this action, Defendant WASTE CONNECTIONS US, INC. did and now does conduct business in the County of Los Angeles, State of California.  At all times material to this action, Defendant WASTE CONNECTIONS US, INC. and its subsidiaries and predecessors owned, constructed, operated, and/or maintained the Landfill located at 29201 Henry Mayo Dr., Castaic, California 91384.

17.    On information and belief, WASTE CONNECTIONS US, INC. exercises significant control over CHIQUITA CANYON, INC. and CHIQUITA CANYON, LLC, including but not limited to the general management of, and daily activities at, the Landfill.

18.    Upon information and belief, Defendant WASTE CONNECTIONS US, INC. is the sole owner of Defendant CHIQUITA CANYON, INC.

19.    Upon information and belief, Defendant CHIQUITA CANYON, INC. is the sole member of Defendant CHIQUITA CANYON, LLC.

20.   Defendant CHIQUITA CANYON, LLC is the record owner of the land on which the Landfill is located.

21.   Defendant CHIQUITA CANYON, LLC obtained a conditional use permit from the County to operate the Landfill.  Upon information and belief, the Landfill is also operated by Defendants CHIQUITA CANYON, INC. and WASTE CONNECTIONS US, INC.  For example, the Landfill's website (www.chiquitacanyon.com) states that the Landfill "is owned and operated by Waste Connections," and many of the employees engaged in daily operations of the Landfill and representing the Landfill before regulatory and governmental entities are employees of Defendant WASTE CONNECTIONS US, INC.

22.   Each Defendant committed, conspired to commit, and/or ratified each of the acts and omissions alleged in this complaint.  Defendants CHIQUITA CANYON, INC., CHIQUITA CANYON, LLC, and WASTE CONNECTIONS US, INC., and each of them, were the agents, servants, employees and/or joint venturers of each other and were acting within the course and scope of their agency, service, employment and joint venture at all relevant times.  All acts performed by Defendants, and each of them, while acting as an agent, servant, employee and/or joint venturer have been adopted and ratified by all other Defendants, and each of them.  Consequently, said Defendants are jointly and severally liable to the Plaintiffs for the injuries and damages sustained as a proximate result of their conduct.

## FACTUAL ALLEGATIONS

**A.    The Landfill and Surrounding Residential Communities**

23.   The Landfill is a 639-acre site located at 29201 Henry Mayo Drive in the unincorporated community of Castaic, California, approximately three miles west of the Interstate 5 on State Route 126 in the Santa Clarita Valley.

24.   The Landfill is situated in the scenic foothills of the Topatopa Mountains, in northwestern Los Angeles County, California, which is home to a number of residential communities.  These communities include not only the

adjacent Val Verde community, but also the Hasley Canyon, Hasley Hills, North Bluffs, Hillcrest, Live Oak, and Williams Ranch neighborhoods of Castaic, as well as other cities and unincorporated communities such as Santa Clarita, Stevenson Ranch, and Valencia. As shown on the map below,[1] the unincorporated community of Val Verde is located to the northwest of the Landfill – with its nearest residence as close as approximately 500 feet from the Landfill on Roosevelt Avenue – and there are numerous other impacted residential neighborhoods as well. All in all, several thousand people make their home in these residential communities, which includes local schools and parks.

25.     The Landfill also borders commercial and industrial areas to its north and northeast, which include several businesses and a post office located approximately 150 feet from the Landfill.



---

[1]     *See* https://lacounty.gov/wp-content/uploads/2023/08/Map-Chiquita-Canyon-Landfill-1.pdf.

**B.    The Landfill's Operations and Current Conditional Use Permit**

26.    The Landfill is a Class III waste disposal facility that accepts non-hazardous residential and commercial solid wastes.  The County first approved the Landfill under a conditional use permit ("CUP") in 1965.  This CUP was subsequently extended and revised on four separate occasions in 1977, 1982, 1997, and 2017.

27.    In July of 2011, the Landfill's owners and operators submitted a CUP application seeking to continue the operation and also sought to expand the Landfill's existing waste footprint laterally from 257 to 400 acres, increase the maximum elevation from 1,430 to 1,573 feet, and increase the daily disposal limits from 6,000 to 12,000 tons of waste per day.

28.    On July 25, 2017, after an extensive environmental review and several public hearings, the Los Angeles County Board of Supervisors approved the Landfill's currently operative CUP 2004-00042-(5).  Among other things, this new CUP expanded the waste disposal area and disposal limits and allowed the Landfill to continue operating and expanding for another 30 years, when a disposal limit of 60 million tons is reached, or when the Landfill reaches its limits of fill, whichever first occurs.

29.    Pursuant to CUP 2004-00042-(5), approximately 400 acres of the Landfill are currently used as a Class III landfill and solid waste disposal site.  A Class III landfill is one that accepts non-hazardous municipal solid waste.  The solid waste currently accepted at the Landfill includes municipal solid waste, residential and commercial waste including yard waste, green waste for composting or recycling, construction and demolition debris, and e-waste for recycling.

30.    In addition to its waste disposal facilities, the Landfill also operates a landfill gas collection and control system, including gas collection wells and headers, blowers for venting gas, systems for treating landfill gas and collecting condensate and leachate, and flares for combusting landfill gas.

31.     The extensive environmental review conducted in connection with the approval of CUP 2004-00042-(5) revealed a number of concerning potential environmental impacts from the Landfill.  As a result, in addition to the supporting Environmental Impact Report, Statements of Overriding Consideration were mandated for air quality, greenhouse gas emissions, and climate change, as these environmental impacts could not be mitigated to below significant levels.

32.     Put plainly, the Landfill was considered to be a potential source of extreme environmental impacts and community concern, requiring significant mitigation and close monitoring to protect the area.

33.     Accordingly, CUP 2004-00042-(5) contains detailed conditions of approval with which the Landfill must abide, designed to ensure that the Landfill operates safely and in a way that avoids or mitigates any potential nuisance to the surrounding community.  For example:

a) Condition No. 12 provides that Defendants must "develop[], maintain[], and operate[] [the Landfill] in full compliance with the conditions of [the CUP], and any [applicable] law, statute, ordinance, or other regulation," including the "conditions and requirements of all permits or approvals issued by other government agencies or departments."

b) Condition No. 63 provides that "[a]s required by the [South Coast Air Quality Management District], [Defendants] shall adopt and implement operational practices to mitigate air quality impacts, including, but not limited to, odor, dust, and vehicular air quality impacts at the [Landfill]. The [Landfill] shall be operated so as not to create a nuisance in the surrounding communities."

c) Condition No. 70 provides that Defendants must submit and adhere to a corrective action plan or additional or different measures to reduce air quality impacts, if any required air quality monitoring test results

1    "exceed the maximum emission levels established by" the

2    Environmental Impact Report supporting the CUP and/or the South

3    Coast Air Quality Management District, if the Department of Public

4    Health determines that the Landfill "is operated in a manner which …

5    creates an odor nuisance to the surrounding communities," or if the Los

6    Angeles County Department of Public Works "determines that

7    additional corrective measures are necessary to address air quality

8    impacts to the residents of the surrounding community."

9    34.    All of these conditions remain valid and in effect at the Landfill.

10    **C.    The Noxious Reaction and Resulting Emissions from the Landfill**

11    35.    The Landfill is currently experiencing the Noxious Reaction – a

12    continuing, uncontrolled, underground, smoldering reaction that is expanding in size

13    and intensity – which is causing noxious odors and gases to be released into the

14    surrounding communities.  As a result, living conditions have become increasingly

15    unbearable to residents, who have also reported adverse health effects, among other

16    harms.

17    36.    The Noxious Reaction began to occur underground in May of 2022 in

18    an approximately 30-acre inactive area in the northwestern portion of the Landfill

19    (the "Reaction Area"), and has since grown in size.  According to reviews

20    performed by the California Department of Resources, Recycling, and Recovery

21    ("CalRecycle") and the United States Environmental Protection Agency ("USEPA")

22    in response to the Noxious Reaction, the event is characterized by, among other

23    things, significant issues with the integrity of the Landfill cover, increased landfill

24    gas temperatures and subsurface temperatures, a change in the chemical

25    composition of landfill gas, intrusion of excess oxygen into the landfill waste,

26    unusual settlement within the Landfill, and damage to and poor performance of gas

27    wells.

28    / / /

37.    The Landfill is located only approximately 500 feet from the nearest home in the nearby residential community of Val Verde on Roosevelt Avenue, and the Reaction Area is located approximately 1,000 feet from the nearest home, as shown on the map below.[2]



38.    The Noxious Reaction has caused increased emissions of landfill gas and odors from the surface of the Landfill, exceeding the Landfill's designated gas generation flow rate.  The Landfill's gas extraction and control systems failed. Defendants caused the Noxious Reaction, and have failed to control or contain it.

39.    The emissions into the surrounding air due to the Noxious Reaction include but are not limited to hydrogen sulfide, benzene, sulfur, dimethyl sulfide, methane, and carbon monoxide, as well as particulate matter, as confirmed by multiple rounds of testing performed by various regulatory agencies and Defendants themselves in response to the Noxious Reaction.

---

[2]    *See* https://www.epa.gov/system/files/documents/2024-03/presentation-chiquita-canyon-landfill-community-meeting-2024-03-21.pdf.

40.    These chemicals can cause harmful health effects.  For example, hydrogen sulfide is an eye, nose, and throat irritant and impacts the neurological and respiratory systems.  Dimethyl sulfide can lead to inflammation and necrosis of the eyes, mouth, and respiratory tract, and may also injure the liver, kidneys, heart, and central nervous system, and trigger nausea and headaches.

41.    The Noxious Reaction has also caused increased production of Landfill leachate (a liquid formed when rain water filters through and draws out chemicals or constituents from landfill wastes and then seeps out of the landfill) as well as elevated leachate temperatures.  On numerous occasions, regulators inspecting the Noxious Reaction observed leachate bubbling, boiling, or shooting out from the Landfill like a geyser, sometimes as high as twelve to eighteen feet in the air.  The Defendants have failed to properly collect, treat, store, or dispose of the leachate, nor have they properly managed it as hazardous waste.  The pooled and flowing leachate, some of which has been found to contain elevated levels of hazardous chemicals such as benzene, creates additional fumes and foul-smelling odors.

42.    Defendants did not alert the nearby community when the Noxious Reaction began, and residents only became aware something was amiss when they started noticing odors coming from the Landfill.

**D.    The Severe Impact of the Noxious Reaction on the Surrounding Community**

43.    The continuing and pervasive noxious emissions from the Landfill's Noxious Reaction have impacted the health of residents in the surrounding communities and deprived the local community of the ability to live peacefully in one of the most beautiful areas of Los Angeles County.

44.    Local residents have experienced and continue to experience health effects ranging from headaches, nausea, and eye, nose, throat, and skin irritations to dizziness, difficulty breathing, and cardiac problems.  They are forced to keep their

doors and windows closed and forego using their yards and engaging in outdoor activities in an attempt to avoid the odors and resulting health issues.

45.    Because humans' sense of smell is well-developed, people can sense these foul odors even before air-monitoring equipment detects fumes at a reference exposure level.  To put it more plainly, residents in the neighborhoods, schools, and businesses near the Landfill are struck by the foul smell even as the Landfill's gas readings report that the odors are below the reference exposure levels, and as the Landfill has acknowledged, the odors may cause health impacts and affect quality of life.  Indeed, the mental stress from living with these odors can be heavy, leading to feelings of helplessness, sadness, anxiety, and depression.

46.    Since January 2023, the South Coast Air Quality Management District (the "South Coast AQMD") – the agency responsible for air quality and pollution control in the South Coast Basin – began receiving complaints from local residents about noxious fumes coming from the Landfill.  These complaints steadily increased throughout 2023 and 2024, with the South Coast AQMD receiving more than 25,000 such complaints in total thus far.

47.    The complaints demonstrate the severe impact that the public has suffered due to the noxious odors and gases emitted by the Landfill.

48.    For example, a summary of these complaints compiled by the USEPA in a Unilateral Administrative Order ("UAO") issued in February 2024 in response to the Noxious Reaction notes that the complaints include "reports of eye irritation, nosebleeds, tinnitus, nausea, migraines, vomiting, vertigo, respiratory symptoms, cardiac issues, and skin issues."

49.    As described in the USEPA's UAO, in the complaints, "[v]arious members of the public reported that they were unable to have their children play outside in the yard, walk their pets, or exercise outdoors, due to odors from the Landfill.  Noxious odors were reported by concerned parents, teachers, staff and students at schools as near as approximately 1.7 miles, and as far as approximately

5.0 miles, from the Landfill, including at Headstart Preschool in Val Verde, Playmakers Preschool in Castaic, Santa Clarita Valley International Elementary School in Castaic, Live Oak Elementary School in Castaic, Castaic Elementary School in Castaic, Castaic High School in Castaic, Rio Vista Elementary School in Canyon Country, West Ranch High School in Stevenson Ranch, and Valencia High School in Valencia.  One parent in Castaic reported that it was 'literally difficult to even walk to the car to take [the] kids to school.'"

50.     The Los Angeles County Department of Public Health has recently set up a survey website to collect additional data regarding Landfill odors from residents living in close proximity to the Landfill.  The survey requests that residents report such facts as the location and types of odors noticed, the strength and duration of the odors, and the effects of the odors on residents' health and daily activities.

51.     Survey results issued December 10, 2024 show that many of the responding residents still observe "very strong" or "strong" odors on a daily basis that prevent them from going outside and/or make them feel ill.  Residents report that these odors last for hours at a time, and in some cases for more than twelve hours.  These odors are currently causing symptoms including headaches; eye, nose, and/or throat irritation; feelings of light-headedness and/or dizziness; coughing, wheezing, and/or difficulty breathing; nausea, vomiting, stomach pain, and/or diarrhea; chest tightness and palpitations; and skin irritations and/or rashes. Residents also report that they suffer from fatigue, anxiety, irritability, difficulty sleeping, stress, and depression as a result of the odors.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

52.    The map below shows the location and severity of the odors experienced by residents living in communities near the Landfill, as reported in this most recent survey.



53.    The Defendants are aware of and admit that the Noxious Reaction at the Landfill has caused serious adverse effects in the surrounding community.

54.    For example, in a section of the Landfill's website regarding odor mitigation FAQs (https://chiquitacanyon.com/odor-mitigation/stipulated-order-for-abatement/), Defendants state that "Chiquita fully recognizes that neighboring communities are suffering odor-related impacts as a result of the [Noxious Reaction]," and that "odors may cause short-term health impacts or may otherwise affect quality of life." Defendants also state that the uncontrolled Noxious Reaction "may continue for years."

55.     Residents are forced to suffer the effects of exposure to the emissions from the Landfill's uncontrolled and continuing Noxious Reaction.

**E.     Multiple Regulatory Agencies Respond to and Investigate the Noxious Reaction, Finding Defendants in Violation of Numerous Regulations and Demanding Mitigation Measures**

56.     In response to the Noxious Reaction, a number of Federal, State, and local agencies and governmental entities charged with protecting the community's air, water, health, and proper disposal of waste investigated and engaged in enforcement efforts regarding the Noxious Reaction and its effects.

57.     These entities include the South Coast AQMD; the California Environmental Protection Agency and four sub-departments, including CalRecycle, the Los Angeles Regional Water Quality Control Board, the Department of Toxic Substances Control, and the California Air Resources Board; the USEPA; as well as County Departments including the Los Angeles County Department of Public Health, Solid Waste Management Program (certified by CalRecycle to act as the Local Enforcement Agency for the Noxious Reaction) and the Los Angeles County Department of Regional Planning.

58.     In November 2023, these entities formed a Multi-Agency Critical Action Team led by the USEPA to better coordinate their investigations and enforcement efforts.

59.     As described in the subsections below, through their efforts, these entities have confirmed that the uncontrolled Noxious Reaction raises significant concerns regarding the public health and environment, and creates a public nuisance.  Their investigations of the Noxious Reaction have led these entities to issue hundreds of notices of violation and other administrative orders based on violations of multiple federal, state, and local regulations with regard to Landfill operations.  Extensive mitigation measures have been ordered in an attempt to

remedy the situation and protect the public health and environment from the detrimental effects of the Noxious Reaction.

60.    Unfortunately, despite the concentrated efforts of these regulatory entities, the Noxious Reaction continues to adversely affect the surrounding community and the public nuisance remains.

1.    **South Coast AQMD Issues Hundreds of Notices of Violation to Defendants for the Noxious Fumes Emanating from the Landfill, and Mandates Extensive Mitigation Measures**

61.    In response to the numerous complaints received from residents in communities surrounding the Landfill about the Noxious Reaction, the South Coast AQMD conducted multiple investigations.

62.    Through its investigations, the South Coast AQMD was able to trace many of the complaints at issue back to the Landfill, confirming the Landfill as the source of the reported noxious odors.  As the South Coast AQMD asserted in its January 17, 2024 Findings and Decision for a Modified Stipulated Order for Abatement, "the ongoing subsurface reaction is the source of the odor complaints received from the public, and the **root cause of an ongoing public nuisance**."

63.    On May 18, 2023, the South Coast AQMD issued an initial Notice of Violation ("NOV") to the Landfill for public nuisance in violation of South Coast AQMD Rule 402 and California Health and Safety Code section 41700.

64.    South Coast AQMD Rule 402 and California Health and Safety Code section 41700 both prohibit the discharge of air contaminants or other materials that create a nuisance.

65.    Specifically, South Coast AQMD Rule 402 provides: "A person shall not discharge from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or which endanger the comfort,

repose, health or safety of any such persons or the public, or which cause, or have a natural tendency to cause, injury or damage to business or property."

66.    California Health and Safety Code section 41700 provides: "Except as otherwise provided in Section 41705, a person shall not discharge from any source whatsoever quantities of air contaminants or other material that cause injury, detriment, nuisance, or annoyance to any considerable number of persons or to the public, or that endanger the comfort, repose, health, or safety of any of those persons or the public, or that cause, or have a natural tendency to cause, injury or damage to business or property."

67.    The South Coast AQMD subsequently issued over 200 additional NOVs to the Landfill in 2023 and 2024 for public nuisance in violation of South Coast AQMD Rule 402 and California Health and Safety Code section 41700, and also cited the Landfill for violation of other rules and regulations.

68.    In light of the NOVs and complaints, the South Coast AQMD initially held a hearing on September 6, 2023 and issued a Stipulated Order for Abatement the following day, which ordered Defendants to comply with 40 different "conditions and increments of progress" to address the issues created by the Noxious Reaction, including odor surveillance and various mitigation measures, such as further investigations of the underlying reaction and odor impacts, reduction of sulfur in flared Landfill gas, and improvements to the Landfill gas collection system and Landfill cover, including installation of a geosynthetic cover over the Reaction Area to limit the migration of landfill gas.

69.    But there was more to come.  After the adoption of the initial Stipulated Order of Abatement, the South Coast AQMD learned of the leachate seeps at the Landfill caused by the Noxious Reaction.  In November 2023, the South Coast AQMD also cited the Landfill for failing to properly maintain its leachate collection and storage system in good operating condition, failing to report equipment

breakdown, failing to submit an excavation plan for the Landfill, as well as other violations.

70.    As a result of its investigations and review of the data collected from the air monitoring it ordered, the South Coast AQMD confirmed that the gas emanating from the Landfill contained elevated levels of dimethyl sulfide and hydrogen sulfide, and was not being properly contained.  It also confirmed that the increased leachate seeping from the Landfill caused additional odor issues.

71.    The Stipulated Order for Abatement was subsequently modified after hearings on January 17, 2024, March 21, 2024, April 24, 2024, August 27, 2024, and November 13, 2024, attempting to further address the continuing uncontrolled reaction at the Landfill.

72.    The most recent modification of the Stipulated Order for Abatement in November 2024 underscores that the Noxious Reaction and that its effects are still uncontained and posing continued issues for the community.  This modification calls for Defendants to take even stricter remedial measures to reduce the noxious odors from the Noxious Reaction, including expanded air monitoring, reduced equipment downtime, increased community access to air quality data, and reduced spills, leaks, and equipment failures.

73.    And yet, the problems persist.  Since the November 2024 modification of the Stipulated Order for Abatement, the South Coast AQMD has issued at least ten additional NOVs to the Landfill for public nuisance in violation of South Coast AQMD Rule 402 and California Health and Safety Code section 41700.

    **2.    California Environmental Protection Agency Departments Confirm Significant Issues with the Landfill and Mandate Remediation**

        **(a)    CalRecycle**

74.    CalRecycle regulates non-hazardous solid waste facilities through entities it certifies to act as the local enforcement agency, and which it then monitors

and assists with technical and enforcement assistance.  As noted above, CalRecycle certified the Los Angeles County Public Health Department to act as the Local Enforcement Agency ("LEA") with regard to the Noxious Reaction.

75.     On October 16, 2023, CalRecycle performed a comprehensive review of the Noxious Reaction and resulting noxious odors emanating from the Landfill for the LEA.  It concluded that during the prior eighteen months, the Landfill had sustained certain conditions, including a "heating/Noxious Reaction [that] is expanding in size and intensity"; "[c]over integrity issues"; "[i]ncreased temperatures and pressures in the landfill gas control systems and waste mass"; "[o]xygen intrusion above 5 percent by volume"; "[l]andfill gas temperatures over 170°F"; "[l]andfill subsurface temperatures over 195°F"; "[e]levated carbon monoxide concentrations above 1000 ppmv"; "[u]nusual[] landfill settlement"; "[d]amage[d] gas wells"; and "[p]oor gas well performance in and around the [Reaction Area]."

76.     CalRecycle noted that "[t]hese conditions … are causing additional gas pressure, odors, elevated leachate temperatures, and damage to the gas extraction system," and that "[t]he landfill gas generated in and around the [Reaction Area] has exceeded the designated gas generation flow rate and caused increased emissions and odors."

77.     CalRecycle provided a number of suggested mitigation measures to resolve these issues, such as repairs and improvements to the cover around the Reaction Area, including design and installation of a geomembrane cover; improvements to or replacement of gas wells; temperature monitoring and sampling of gas and leachate; reduction of oxygen concentration in interior wells; hiring an expert to determine the chemicals involved in causing odor issues; and regular submission of monitoring data for review.

78.     The LEA mandated that the Landfill implement these suggested remedial measures in an October 17, 2023 letter to Landfill management.

79.    On November 14, 2023, CalRecycle reported to the LEA that several mitigation measures had not been implemented by the Landfill, and recommended that the Landfill take additional actions to mitigate the effects of the Noxious Reaction.

80.    On May 15, 2024, CalRecycle placed the Landfill on the Inventory of Solid Waste Facilities Which Violate State Minimum Standards, after issuing a Notice of Intent to do so on February 8, 2024, and providing a 90-day correction period, which passed without the violations being remedied.  CalRecycle placed the Landfill on the Inventory for violation of State Minimum Standards under California Code of Regulations, Title 27, sections 20921 (gas monitoring and control) and 20750 (site maintenance).

81.    Recently, on December 2, 2024, CalRecycle sent a letter to the LEA after reviewing Defendants' most recent proposed revised remediation plan. CalRecycle found certain portions of this plan inadequate, including its timeline. CalRecycle also raised questions about the integrity of the Landfill's geosynthetic liner and requested additional data from the Landfill.

**(b)    Water Quality Control Board**

82.    The Los Angeles Regional Water Quality Control Board (the "Water Board"), the agency responsible for protecting ground and surface water quality in the area, conducted several initial inspections of the Landfill in response to the Noxious Reaction, including on October 3, 2023, and on November 2, 2023, during a site visit by multiple regulatory agencies.  These inspections confirmed that leachate was seeping from the Landfill as a result of the Noxious Reaction.

83.    As a result of its investigations and inspections, the Water Board issued a series of NOVs to Defendants related to the leachate seepage, on, inter alia, November 22, 2023, March 28, 2024, April 9, 2024, and June 27, 2024, for violation of the following: the California Water Code, including California Water Code sections 13267 and 13383; various Water Quality Control Board waste discharge

and reporting requirements designed to protect groundwater and surface water, under Water Board Order No. R4-2018-0172, including a Monitoring and Reporting Program (MRP, CI 6231), adopted by the Water Board on December 13, 2018; the State Water Resources Control Board's National Pollutant Discharge Elimination System (NPDES) General Permit for Storm Water Discharges Associated with Industrial Activities amended November 6, 2018 and effective July 1, 2020 (Order No. 2014-0057-DWQ amended by 2015-0122-DWQ), NPDES No. CAS000001; and a March 20, 2024 Water Board Investigative Order (No. R4-2024-0010) requiring the Landfill to perform certain monitoring and reporting activities.

84.     On September 25, 2024, in light of the Landfill's continued failure to contain the leachate seepage due to the Noxious Reaction, the Water Board reaffirmed a decision denying the Landfill's request to place waste in an additional cell within the Landfill.

### (c)     Department of Toxic Substances Control

85.     The Department of Toxic Substances Control ("DTSC") – which regulates California facilities' hazardous waste management to ensure compliance with environmental laws – has investigated and tested the leachate produced by the Noxious Reaction.  This testing revealed that the leachate contained elevated levels of benzene.

86.     As a result, the DTSC issued a Proposition 65 Notice relating to the Landfill on February 16, 2024, on the basis that "an illegal discharge and or a threatened illegal discharge of a hazardous waste has occurred and that such discharge … is likely to cause substantial injury to the public health or safety." Specifically, the Notice stated that the Noxious Reaction was causing the production of "approximately 200,000 gallons of liquid within the landfill per day," and that Defendants had admitted that leachate and condensate emanating from the Landfill tested above regulatory limits for benzene and other hazardous constituents, leachate seeps would likely increase, and that numerous seeps had reached the Landfill's

stormwater channels.  The Notice also stated that DTSC testing had found elevated benzene levels in samples collected from the Reaction Area, and that "the potential for illegal hazardous waste discharges, including, but not limited to benzene, exists if the landfill is unable to contain hazardous liquids produced from the reaction in a controlled manner and such discharges would be likely to cause substantial injury."

87.    The DTSC subsequently issued Summary of Violation notices to Defendant CHIQUITA CANYON, LLC on February 15, 2024 and March 29, 2024, for improper hazardous waste management at the Landfill in violation of various hazardous waste control laws, including California Code of Regulations, Title 22, sections 66262.11, 66262.20(a), and 66265.31, and California Health and Safety Code sections 25189.2(c), 25189.2(d).  Violations included the failure to properly dispose of hazardous waste, and the failure to minimize the possibility of releases of hazardous waste or waste constituents.

### 3.    The County Finds the Landfill is Creating a Public Nuisance and Violating Conditions of Its CUP

88.    Acting as the LEA for the Noxious Reaction, the County Department of Public Health conducted multiple inspections of the Landfill during which its inspectors observed leachate seeping from the Reaction Area.  The LEA also commissioned and reviewed studies by CalRecycle regarding the Noxious Reaction and its effects.

89.    On October 17, 2023, the LEA notified the Landfill management that the "serious issues" at the Landfill "have likely caused the many violations cited by the [South Coast AQMD] investigations this year," and that the Landfill "needs to act promptly to address the current conditions for the protection of public health and the environment."  The LEA mandated that the Landfill take several corrective and mitigation actions proposed by CalRecycle, including addressing issues with the Landfill cover, monitoring and sampling gas and leachate generated by the Landfill, and submitting regular data regarding the Noxious Reaction.

90.    The LEA issued a further letter to Landfill management on November 21, 2023, requiring additional mitigation measures in response to further analysis performed by CalRecycle, including a plan to construct a soil reaction break/barrier, improve the Landfill cover, analyze the stability of the slope near the leachate outbreak, and collect temperatures in and around the Reaction Area.

91.    On February 7, 2024, a Community Air Sampling and Health Risk Screening Evaluation Report prepared by Roux Associates, Inc. on behalf of the County found elevated levels of hydrogen sulfide in the communities surrounding the Landfill that exceeded the recommended limits set by the California Environmental Protection Agency's Office of Environmental Health Hazard Assessment.  Roux Associates, Inc. explained that hydrogen sulfide "can be an irritant to the eyes, nose, or throat, and can impact the neurological and respiratory systems. … [T]he most common symptoms following exposure to odorants include headaches, nasal congestion, eye, nose and throat irritation, hoarseness/sore throat, cough, chest tightness, shortness of breath, wheezing, heart palpitations, nausea, drowsiness and mental depression."

92.    On June 6, 2024, after monitoring Defendants' progress in implementing the requested mitigation measures and trying for many months to gain compliance, the LEA issued a Compliance Order.  The Compliance Order referenced CalRecycle's placement of the Landfill on the Inventory of Solid Waste Facilities Which Violate State Minimum Standards, and noted, among other things, that methane emitted into the air from the Reaction Area continued to exceed required levels.  The LEA found the Landfill in violation of California Code of Regulations, Title 17, sections 20921 (regarding gas monitoring and control) and 20750 (regarding site maintenance), and mandated specific remediation measures and a compliance schedule.

93.    Despite the fact that the LEA has spent a significant amount of time and resources attempting to work with Defendants on remediation efforts,

Defendants have still not successfully contained and mitigated the Noxious Reaction to prevent adverse effects on the surrounding community.

94.    Separately from its role as LEA, the County Department of Public Health also issued a Public Health Notice to Landfill management on July 26, 2023, signed by Health Officer Dr. Muntu Davis, regarding the persistent noxious odors emanating from the Landfill and impacting the health of nearby residents.  The Public Health Notice warned the Landfill that "this situation meets the definition of a public nuisance under Civil Code section 3479 and section 11.02.190 of the Los Angeles County Code," and that "rapid action must be taken to minimize or eliminate the odors in order to protect the health and safety of the nearby residents."

95.    On August 8, 2023, the County Department of Public Health also issued additional recommendations to Landfill management as to mitigation measures that should be taken to alleviate the health impacts of the noxious odors emanating from the Noxious Reaction, including increased monitoring and testing of landfill gas for chemicals such as dimethyl sulfide and hydrogen sulfide.

96.    On August 18, 2023, the County Department of Regional Planning issued a Notice of Violation to Defendant CHIQUITA CANYON, LLC, citing the Landfill for violations of certain conditions of its operative CUP in connection with the Noxious Reaction, specifically, Conditions 12 and 63, also violations of Los Angeles County Code sections 22.02.030(B), 22.242.020, and 22.242.030.

**4.    The USEPA Inspects the Landfill, Finds it in Violation of Multiple Regulations, and Issues a Compliance Order and Finding of Violation**

97.    The USEPA also responded to the Noxious Reaction by formally requesting information from the Landfill, and participating in on-site monitoring and investigations of the Landfill.

98.    The USEPA confirmed that the Landfill was experiencing elevated temperatures and increased leachate production, as well as "ongoing conditions"

including "[s]our odors throughout the Reaction Area"; leachate "flowing," "bubbling," and "seeping" out of various areas of the Landfill; "[c]over integrity issues creating areas of exposed trash and exceedances measured during surface emissions monitoring"; "[s]tanding liquid"; and "[l]andfill gas pockets."

99.    During a November 2, 2023 joint inspection, the USEPA and other regulatory agencies "observed that uncontrolled leachate condensate was spewing out of gas extraction wellheads twelve (12) to eighteen (18) feet into the air."

100.    Surface emissions monitoring by the USEPA in November 2023 and January 2024 detected excess methane concentrations, and leachate testing in December 2023 revealed benzene exceeding regulatory thresholds.

101.    On February 21, 2024, the USEPA issued its UAO, finding that the Landfill violated multiple federal laws, including certain provisions of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901, et seq, and the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601, et seq.

102.    In particular, the USEPA found that the Landfill's "past and present handling, storage, treatment and disposal of contaminated materials and leachate may present an imminent and substantial endangerment to human health or the environment within the meaning of Section 7003(a) of RCRA, 42 U.S.C. § 6973(a)."

103.    It also found that the conditions at the Landfill due to the Noxious Reaction "may constitute an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from the facility within the meaning of Section 106(a) of CERCLA, 42 U.S.C. § 9606(a)."

104.    The UAO required the Landfill to comply with the law and take certain enumerated mitigation measures to address the problems caused by the gas and leachate emissions from the Landfill, including the development of specific plans to,

among other things, manage the leachate and prevent its migration offsite, install a high-density polyethylene geomembrane cover in the Reaction Area, and monitor the odors and other emissions from the Landfill and identify techniques to remedy impacts on the nearby community.

105.   On June 4, 2024, the USEPA issued a Finding of Violation to Landfill management for violations of sections 111(e) and 112 of the Clean Air Act, 42 U.S.C. §§ 7411(e) and 7412, due to continuing emanations of noxious fumes from the Landfill's Noxious Reaction.  Specifically, the USEPA found the Landfill in violation of the Standards of Performance for New Stationary Sources, General Provisions (40 C.F.R. Part 60, Subpart A); the Standards of Performance for Municipal Solid Waste Landfills That Commenced Construction, Reconstruction, or Modification After July 17, 2014 (40 C.F.R. Part 60, Subpart XXX); the National Emission Standards for Hazardous Air Pollutant Source Categories, General Provisions (40 C.F.R. Part 63, Subpart A); the National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills (40 C.F.R. Part 63, Subpart AAAA); and the Title V Air Quality Operating Permit, issued November 14, 2017 and revised September 28, 2023, for the Landfill.  The Finding of Violation states that the Landfill failed to properly operate its gas collection wells and devices, failed to properly maintain and operate air pollution control equipment, failed to correct elevated wellhead temperatures, and did not consistently conduct required monitoring, among other things.

106.   The Finding of Violation also notes that "[t]he violations described above have caused or can cause excess emissions of hydrogen sulfide, volatile hazardous air pollutants ("VHAP"), and volatile organic compounds ("VOC") including methane."

107.   It also emphasizes the following with regard to the various emissions from the Landfill:

a) "Hydrogen sulfide can lead to irritation, headaches, nausea, and respiratory stress[, … and] also significantly contributes to local odor nuisances reducing surrounding quality of life."

b) "VOCs and methane contribute to ground-level ozone formation. Breathing ozone contributes to a variety of health problems including chest pain, coughing, throat irritation, and congestion.  It can worsen bronchitis, emphysema, and asthma.  Ground-level ozone can also reduce lung function and inflame lung tissue.  Repeated exposure may permanently scar lung tissue."

c) "VHAP emissions can lead to a variety of adverse health effects including cancer, respiratory irritation, and damage to the nervous system."

d) "Methane emissions can lead to fires or explosions as it accumulates on or off site.  Methane is a very potent greenhouse gas and a leading contributor to global climate change, and it is also an ozone precursor."

**F.     Despite the Multi-Agency Response, the Noxious Reaction Continues to Adversely Affect the Surrounding Community**

108.   Although multiple regulatory and governmental agencies have spent time and resources for an almost two-year period to address the public health concerns caused by the Noxious Reaction, Defendants have not abated the nuisance but allowed it to continue to impact all of the neighboring homes and businesses.

109.   Remediation measures taken by Defendants in response to these entities' orders have not been sufficient, and Defendants have not properly controlled the Noxious Reaction or mitigated its effects.

110.   As shown in the community data collected by the County as of December 10, 2024, residents in the area surrounding the Landfill continue to experience adverse health impacts from the noxious fumes emanating from the

1  Landfill, and are also unable to use and enjoy their properties or go about their daily
2  lives without being impacted by the odors and toxins.

3      111.   As a result, the Noxious Reaction continues to cause these residents
4  significant harm on a daily basis.

5  **FIRST CAUSE OF ACTION**

6  **Public Nuisance – Nuisance Per Se**

7  **(All Plaintiffs against All Defendants)**

8      112.   Plaintiffs hereby incorporate by reference the allegations in Paragraphs
9  1-60, 74-81, 88-96, and 108-111 above as if fully set forth in this cause of action.

10      113.   The Noxious Reaction is a nuisance per se because the object,
11  substance, activity, and/or circumstance at issue has been expressly declared to be a
12  nuisance under the Los Angeles County Code's Nuisance Abatement Ordinance,
13  sections 1.23.010 et seq., and under Los Angeles County Code section 22.242.040,
14  and is maintained in violation of these provisions.

15      114.   Specifically, section 1.23.040 of the Los Angeles County Code defines
16  a public nuisance as "[a]ny condition on a property that is maintained in violation of
17  any provision of Titles 7 through 32 of this code," and states that any such condition
18  "shall be deemed unlawful and a public nuisance and may be abated as such."

19      115.   Section 1.23.050 of the Los Angeles County Code states that "[n]o
20  person shall cause, maintain, or permit to be caused or maintained a public nuisance,
21  as defined in this chapter, or any property, and every day such public nuisance
22  continues shall be regarded as a new and separate violation."

23      116.   And section 22.242.040 states that "[a]ny use of property contrary to
24  the provisions of this Title 22 shall be, and the same is hereby declared to be
25  unlawful and a public nuisance, and the authorized legal representative of the
26  County may commence actions and proceedings for the abatement thereof, in the
27  manner provided by law, and may take such other steps and may apply to any court
28  having jurisdiction to grant such relief as will abate or remove such use and restrain

and enjoin any person from using any property contrary to the provisions of this Title 22."

117.  Here, the Los Angeles County Department of Regional Planning has cited Defendants for violations of Condition Nos. 12 and 63 of its operative CUP in connection with the Noxious Reaction, as stated in its August 18, 2023 Notice of Violation issued to Defendant CHIQUITA CANYON, LLC, discussed in Paragraph 96, *supra*.  Additionally, Defendants, and each of them, are currently in violation of the following provisions of the operative CUP, as also alleged in Paragraphs 154-156, *infra*:

a)  Condition No. 12 of the CUP, which provides that Defendants must "develop[], maintain[], and operate[] [the Landfill] in full compliance with the conditions of [the CUP], and any [applicable] law, statute, ordinance, or other regulation."  In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants have and are continuing to violate Condition Nos. 12, 63, and 70 of the CUP, as detailed in this Paragraph.  Additionally, as detailed in Paragraphs 121-156, *infra*, Plaintiffs allege that Defendants have violated and are currently violating, inter alia, California Civil Code sections 3479 and 3480; California Penal Code sections 370 and 373a; and multiple provisions of the Los Angeles County Code, including sections 22.242.020(A)-(B), 22.02.030(B), 22.242.030(A) thereof, as well as its Nuisance Abatement Ordinance, sections 1.23.010, et seq., including sections 1.23.040 and 1.23.050  As a result, Defendants, and each of them, are in violation of Condition No. 12 of the CUP.

b)  Condition No. 63 of the CUP, which provides that "[a]s required by the [South Coast AQMD], the permittee shall adopt and implement operational practices to mitigate air quality impacts, including, but not limited to, odor, dust, and vehicular air quality impacts at the [Landfill].

The [Landfill] shall be operated so as not to create a nuisance in the surrounding communities."  As discussed in Paragraphs 1-9 and 35-111, *supra*, Defendants have not properly mitigated air quality impacts due to the Noxious Reaction; the noxious fumes emanating from the Landfill continue to impact surrounding residents.  Additionally, as discussed in Paragraphs 1-9, 35-111, and 112-141 herein, the Defendants are creating a nuisance in the surrounding communities through their actions and/or inactions with regard to the Noxious Reaction.  As a result, Defendants, and each of them, are in violation of Condition No. 63 of the CUP.

c) Condition No. 70, which provides that Defendants must submit and adhere to a corrective action plan or additional or different measures to reduce air quality impacts, if any required air quality monitoring test results "exceed the maximum emission levels established by" the Environmental Impact Report supporting the CUP and/or the South Coast AQMD, if the Los Angeles County Department of Public Health determines that the Landfill "is operated in a manner which … creates an odor nuisance to the surrounding communities," or if the Los Angeles County Department of Public Works "determines that additional corrective measures are necessary to address air quality impacts to the residents of the surrounding community."  The Los Angeles County Department of Public Health has determined that the Landfill is creating an odor nuisance in the surrounding communities, as stated in its July 26, 2023 Public Health Notice, discussed in Paragraph 94, *supra*.  As a result, Defendants, and each of them, are in violation of Condition No. 70 of the CUP.

118.  Pursuant to provisions of Title 22 of the Los Angeles County Code, land may not be used in violation of planning and zoning standards, including

applicable Conditional Use Permits.  See, e.g., Los Angeles County Code sections 22.242.020-22.242.030.

119.  Accordingly, the Defendants' violation of their CUP is a per se public nuisance.

120.  As a result of the continuing nature of the public nuisance caused by the Noxious Reaction, Plaintiffs cannot be adequately compensated by damages for the harm they have suffered and continue to suffer and are therefore without an adequate remedy at law.  An injunction is therefore required as set forth in the following Prayer for Relief.

## SECOND CAUSE OF ACTION

### Public Nuisance

### (All Plaintiffs against All Defendants)

121.  Plaintiffs hereby incorporate by reference all of the above-stated allegations as if fully set forth in this cause of action.

122.  Defendants, and each of them, are liable for creating a public nuisance under California Civil Code sections 3479 and 3480.

123.  California Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway."

124.  California Civil Code section 3480 defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

125.   Defendants, and each of them, by their actions and/or failure to act in constructing, operating, and/or maintaining the Landfill created, substantially contributed to creation, or permitted the Noxious Reaction to exist and to continue.

126.   The Noxious Reaction has been and continues to be harmful to the health of the residents in the adjacent neighborhoods and communities surrounding the Landfill, from nearby Val Verde (in which the nearest residence is only approximately 500 feet from the Landfill) to Santa Clarita.  The Noxious Reaction has also had and continues to have effects that are significantly intrusive and/or offensive to the senses, an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, and an unlawful obstruction to the free passage or use, in the customary manner, of public waterways, parks, and streets.

127.   For example, as a result of the Noxious Reaction, noxious odors and gases such as hydrogen sulfide and dimethyl sulfide have been released by the Landfill.  Leachate containing chemicals seeps out of the Landfill, causing additional fumes and foul-smelling odors.

128.   Local residents have experienced and continue to experience health effects ranging from headaches, nausea, and eye, nose, throat, and skin irritations to dizziness, difficulty breathing, and cardiac problems.

129.   Residents have also been forced to keep their doors and windows closed and forego using their yards and engaging in outdoor activities in an attempt to avoid the odors and resulting health issues.

130.   The fumes have affected nearby schools and public outdoor areas. Residents have found it difficult to go outside and take their children to school.

131.   Despite the efforts and orders of multiple governmental and regulatory agencies over an extended time period, Defendants, and each of them, by their actions and/or failure to act in creating and responding to the Noxious Reaction and

its adverse impacts, have caused and failed to sufficiently control and mitigate the Noxious Reaction and its effects.

132.    As recently as December 10, 2024, survey results showed that many people living in the communities near the Landfill have reported "very strong" or "strong" odors on a daily basis that prevent them from going outside and/or make them feel ill.  These odors last for hours at a time – sometimes more than twelve hours, and are currently causing symptoms including headaches; eye, nose, and/or throat irritation; feelings of light-headedness and/or dizziness; coughing, wheezing, and/or difficulty breathing; nausea, vomiting, stomach pain, and/or diarrhea; chest tightness and palpitations; and skin irritations and/or rashes.  Residents also report that they suffer from fatigue, anxiety, irritability, difficulty sleeping, stress, and depression as a result of the odors.

133.    Defendants acknowledge on their website for the Landfill that "neighboring communities are suffering odor-related impacts as a result of the [Noxious Reaction]," that "odors may cause short-term health impacts or may otherwise affect quality of life," and that the uncontrolled Noxious Reaction "may continue for years."

134.    The Noxious Reaction has affected and continues to affect a substantial number of people at the same time, namely, those in Val Verde, the Hasley Canyon, Hasley Hills, North Bluffs, Hillcrest, Live Oak, and Williams Ranch neighborhoods of Castaic, as well as other cities and unincorporated communities such as Santa Clarita, Stevenson Ranch, and Valencia.

135.    An ordinary person would be reasonably annoyed or disturbed by the conditions resulting from the Noxious Reaction.

136.    The seriousness of the harm caused by the Noxious Reaction far outweighs any social utility of Defendants' conduct.

137.    Neither the County nor the People (including the residents living in the communities surrounding the Landfill) consented to Defendants' conduct.

138.   Defendants' conduct in causing and/or permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects is a substantial factor in causing harm to Plaintiffs.  For example, Defendants themselves as well as the regulatory and governmental entities responding to the Noxious Reaction have confirmed that the Noxious Reaction is causing noxious odors and gases to emanate from the Landfill and is causing leachate to seep out of the Landfill, creating additional odors.  Multiple governmental and regulatory entities have found Defendants are creating a public nuisance and that the adverse effects experienced by nearby residents are directly connected to the Noxious Reaction.  And Defendants themselves admit on their website that the Noxious Reaction is creating odors that are negatively impacting nearby residents' health and quality of life.

139.   The continuing nature of the public nuisance caused by the Noxious Reaction has caused and continues to cause the public to suffer and to be threatened with great and irreparable harm and injury, in that the Noxious Reaction has resulted in, and unless restrained by this Court, will continue to result in, detriment to the health, safety, peace, comfort, and general welfare of the public and people residing and owning real property in the vicinity of the Landfill, as well as the interests of the general public in the reasonable regulation of property conditions.

140.   As a result, Plaintiffs cannot be adequately compensated by damages for the harm they have suffered and continue to suffer and are therefore without an adequate remedy at law.  An injunction is therefore required to prevent multiple and repetitious unlawful acts occurring at the Landfill, as further set forth in the following Prayer for Relief.

141.   Defendants, and each of them, are also liable for civil penalties pursuant to Los Angeles County Code section 1.23.090 – which provides that "[a]ny person who causes, maintains, or permits to be caused or maintained a public nuisance on any property shall be liable for a civil penalty for each day or part thereof that said public nuisance occurs," and authorizes the County Counsel to seek

the recovery of such penalties in a civil proceeding for abatement, removal, or enjoinment of any public nuisance, pursuant to Los Angeles County Code section 1.23.060 – for their causation and maintenance of a public nuisance for each day or part thereof that said public nuisance occurs, in an amount according to proof.

## THIRD CAUSE OF ACTION

**Violation of California Business and Professions Code sections 17200 et seq.**

**(Plaintiff the People against All Defendants)**

142.    Plaintiff the People hereby incorporate by reference all of the above-stated allegations as if fully set forth in this cause of action.

143.    The People bring this action pursuant to Business and Professions Code sections 17200 et seq. to protect the public as consumers and competitors from the unlawful and unfair business acts and practices committed by Defendants, to wit: operation of the Landfill in a manner that fails to comply with statutory and regulatory standards governing such operations, including but not limited to by allowing and failing to mitigate the Noxious Reaction, by creating and maintaining a public nuisance, and by violating the County Code, the Landfill's operative CUP, and other applicable laws and regulations discussed below; and by engaging in immoral, unethical, oppressive, or unscrupulous conduct causing injury to the public that outweighs any benefits.

144.    More specifically, on a continuous and ongoing basis, at least since May of 2022, Defendants, and each of them, in the course of their business as owners and operators of the Landfill, have been reaping financial gain while engaging in a pattern or practice of unlawful business acts and practices with regard to their construction, operation, and/or maintenance of the Landfill and response to the Noxious Reaction, in violation of California Business and Professions Code sections 17200 et seq., including the following:

a) Defendants have created a condition that is "injurious to health … or is indecent or offensive to the senses, or an obstruction to the free use of

property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway," in violation of California Civil Code section 3479, as described in Paragraphs 121-141 herein.

b) Defendants have created a public nuisance in violation of California Civil Code section 3480, as described in Paragraphs 121-141 herein.

c) These actions are also a violation of California Penal Code section 370, which describes a public nuisance as "[a]nything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway."

d) Defendants have created a nuisance per se under the Los Angeles County Code by violating the conditions of their CUP with regard to the Noxious Reaction, as described in Paragraphs 112-120 herein.

e) Defendants have maintained, permitted, or allowed the above-mentioned public nuisance upon their property after reasonable notice in writing by a public health officer to remove, discontinue, or abate the public nuisance, in violation of California Penal Code section 373a. Specifically, Defendants allowed the above-mentioned public nuisance to continue after receiving a Public Health Notice on July 26, 2023 from the Los Angeles County Department of Public Health, signed by a Health Officer, which stated that the persistent noxious odors

emanating from the Landfill due to the Noxious Reaction was a public nuisance and demanded rapid action to abate same.  Under California Penal Code section 373a, "[t]he existence of the public nuisance for each and every day after service of the notice is a separate and distinct offense."

f) In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated several conditions of their operative CUP, as described in Paragraphs 110-118 and 154-156 herein.  These violations are a misdemeanor, pursuant to Condition No. 20 of the CUP and Los Angeles County Code section 22.242.030(A).

g) In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated several provisions of the Los Angeles County Code, as described in Paragraphs 112-120 and 154-156 herein.

h) In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated South Coast AQMD Rule 402 and California Health and Safety Code section 41700, as described in Paragraphs 61-73 herein.

i) In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated California Code of Regulations, Title 27, sections 20921 (gas monitoring and control) and 20750 (site maintenance), as described in Paragraphs 74-81 herein.

j) In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated the California Water Code, including California Water Code sections 13267 and 13383; various Water Quality Control Board waste

1    discharge and reporting requirements designed to protect groundwater

2    and surface water, under Water Board Order No. R4-2018-0172,

3    including a Monitoring and Reporting Program (MRP, CI 6231),

4    adopted by the Water Board on December 13, 2018; the State Water

5    Resources Control Board's National Pollutant Discharge Elimination

6    System (NPDES) General Permit for Storm Water Discharges

7    Associated with Industrial Activities amended November 6, 2018 and

8    effective July 1, 2020 (Order No. 2014-0057-DWQ amended by 2015-

9    0122-DWQ), NPDES No. CAS000001; and a March 20, 2024 Water

10    Board Investigative Order (No. R4-2024-0010) requiring the Landfill to

11    perform certain monitoring and reporting activities, as described in

12    Paragraphs 82-84 herein.

13    k) In permitting the Noxious Reaction to occur and failing to contain it or

14    mitigate its effects, Defendants, and each of them, have violated

15    California Code of Regulations, Title 22, sections 66262.11,

16    66262.20(a), and 66265.31, and California Health and Safety Code

17    sections 25189.2(c), 25189.2(d), as described in Paragraphs 85-87

18    herein.

19    l) In permitting the Noxious Reaction to occur and failing to contain it or

20    mitigate its effects, Defendants, and each of them, as described in

21    Paragraphs 97-107 herein, have violated certain provisions of the

22    Resource Conservation and Recovery Act (RCRA), 42 U.S.C. §§ 6901,

23    et seq, and the Comprehensive Environmental Response,

24    Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§

25    9601, et seq., as well as sections 111(e) and 112 of the Clean Air Act,

26    42 U.S.C. sections 7411(e) and 7412, specifically through violations of

27    the Standards of Performance for New Stationary Sources, General

28    Provisions (40 C.F.R. Part 60, Subpart A); the Standards of

Performance for Municipal Solid Waste Landfills That Commenced Construction, Reconstruction, or Modification After July 17, 2014 (40 C.F.R. Part 60, Subpart XXX); the National Emission Standards for Hazardous Air Pollutant Source Categories, General Provisions (40 C.F.R. Part 63, Subpart A); the National Emission Standards for Hazardous Air Pollutants: Municipal Solid Waste Landfills (40 C.F.R. Part 63, Subpart AAAA); and the Title V Air Quality Operating Permit, issued November 14, 2017 and revised September 28, 2023, for the Landfill.

145.   Defendants' above-mentioned violations listed in Paragraph 144, *supra*, are also unfair business acts and practices because they are violations of public policy tethered to specific statutes or regulations.

146.   Defendants' above-described conduct also constitutes unfair business acts and practices because in permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants have caused and continue to cause the release of noxious odors and gases and leachate into the surrounding community's air; conduct which is immoral, unethical, oppressive, and/or unscrupulous and has caused and continues to cause significant harm to the public that outweighs its benefits.

147.   As a direct and proximate result of the foregoing unlawful and unfair acts and practices, Defendants, and each of them, have received income, financial gain, and other benefits, which would not have been received had Defendants not engaged in the unlawful and unfair acts and practices referenced in Paragraphs 144-146, *supra*.

148.   As a direct and proximate result of the foregoing unlawful and unfair acts and practices, Defendants, and each of them, have caused a detrimental impact on the public and people residing and owning real property in the vicinity of the Landfill.  Specifically, Defendants' conduct in permitting the Noxious Reaction to

occur and failing to contain it or mitigate its effects has caused the Landfill to emit noxious fumes and odors into the surrounding air.  Local residents have suffered and continue to suffer serious adverse health effects from these emissions, as well as serious impacts to their use and enjoyment of their property and daily activities.

149.   Defendants acknowledge on their website for the Landfill that "neighboring communities are suffering odor-related impacts as a result of the [Noxious Reaction]," that "odors may cause short-term health impacts or may otherwise affect quality of life," and that the uncontrolled Noxious Reaction "may continue for years."

150.   The People have no adequate remedy at law in that damages are insufficient to protect the public from the future danger and harm caused by the acts and practices described herein.

151.   Unless injunctive relief is granted to enjoin the future unlawful business practices of Defendants, the People will suffer irreparable injury and damage.

152.   The People are informed and believe, and based thereon allege, that Defendants presently engage in the herein-mentioned unlawful conduct, and will continue to do so unless enjoined by an order of this Court, and therefore request an injunction under Business and Professions Code section 17203 as set forth in the following Prayer for Relief.

153.   Defendants, and each of them, are also liable pursuant to California Business and Professions Code section 17206(a) for civil penalties up to $2,500 for each violation or each act of unlawful conduct.

/ / /

/ / /

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

**Violation of Los Angeles County Code sections 1.23.010 et seq., 22.02.030(B), 22.242.020-22.240.040**

**(Plaintiff the County against All Defendants)**

154.    Plaintiffs hereby incorporate by reference all of the above-stated allegations as if fully set forth in this cause of action.

155.    In permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants, and each of them, have violated several provisions of the Los Angeles County Code, including the following:

a)  The Los Angeles County Code's Nuisance Abatement Ordinance, section 1.23.010 et seq.  Specifically, section 1.23.040 of the Los Angeles County Code defines a public nuisance as "[a]ny condition on a property that is maintained in violation of any provision of Titles 7 through 32 of this code," and states that any such condition "shall be deemed unlawful and a public nuisance and may be abated as such[,]" and section 1.23.050 states that "[n]o person shall cause, maintain, or permit to be caused or maintained a public nuisance, as defined in this chapter, or any property, and every day such public nuisance continues shall be regarded as a new and separate violation."  As detailed in Paragraphs 112-120 herein, Defendants' violations of the operative CUP are a per se public nuisance, which violate the Nuisance Abatement Ordinance.

b)  Section 22.02.030(B) of the Los Angeles County Code, providing that "[n]o land shall be used, and no structure shall be constructed, occupied, enlarged, altered, or moved except as permitted in this Title 22."  Defendants are in violation of the following provisions of the CUP which governs the operation of the Landfill:

i. Condition No. 12 of the CUP, which provides that Defendants must "develop[], maintain[], and operate[] [the Landfill] in full compliance with the conditions of [the CUP], and any [applicable] law, statute, ordinance, or other regulation."  The Los Angeles County Department of Regional Planning has cited Defendants for being in violation of certain conditions of its operative CUP in connection with the Noxious Reaction, as stated in its August 18, 2023 Notice of Violation issued to Defendant CHIQUITA CANYON, LLC, described in Paragraph 96, *supra*.  Additionally, in permitting the Noxious Reaction to occur and failing to contain it or mitigate its effects, Defendants have and are continuing to violate Condition Nos. 12, 63, and 70 of the CUP, as detailed in this Paragraph.  Further, as detailed in Paragraphs 121-156 herein, Plaintiffs allege that Defendants have violated and are currently violating, inter alia, California Civil Code sections 3479 and 3480, California Penal Code sections 370 and 373a, and multiple provisions of the Los Angeles County Code, including sections 22.242.020(A)-(B), 22.02.030(B), 22.242.030(A) thereof, as well as its Nuisance Abatement Ordinance, section 1.23.010, et seq., including sections 1.23.040 and 1.23.050.  As a result, Defendants, and each of them, are in violation of Condition No. 12 of the CUP.

ii. Condition No. 63 of the CUP, which provides that "[a]s required by the [South Coast AQMD], the permittee shall adopt and implement operational practices to mitigate air quality impacts, including, but not limited to, odor, dust, and vehicular air quality impacts at the [Landfill].  The [Landfill] shall be operated so as not to create a nuisance in the surrounding communities."  As

discussed in Paragraphs 1-9 and 35-111 herein, Defendants have
not properly mitigated air quality impacts due to the Noxious
Reaction; the noxious fumes emanating from the Landfill
continue to severely impact surrounding residents.  Additionally,
as discussed in Paragraphs 1-9, 35-111, and 112-141 herein, the
Defendants are creating a nuisance in the surrounding
communities through their actions and/or inactions with regard to
the Noxious Reaction.  As a result, Defendants, and each of
them, are in violation of Condition No. 63 of the CUP.

   iii.  Condition No. 70, which provides that Defendants must submit
and adhere to a corrective action plan or additional or different
measures to reduce air quality impacts, if any required air quality
monitoring test results "exceed the maximum emission levels
established by" the Environmental Impact Report supporting the
CUP and/or the South Coast AQMD, if the Los Angeles County
Department of Public Health determines that the Landfill "is
operated in a manner which … creates an odor nuisance to the
surrounding communities," or if the Los Angeles County
Department of Public Works "determines that additional
corrective measures are necessary to address air quality impacts
to the residents of the surrounding community."  The Los
Angeles County Department of Public Health has determined
that the Landfill is creating an odor nuisance in the surrounding
communities, as stated in its July 26, 2023 Public Health Notice,
described in Paragraph 94, *supra*.  As a result, Defendants, and
each of them, are in violation of Condition No. 70 of the CUP.

Accordingly, Defendants, and each of them, are in violation of Los
Angeles County Code section 22.02.030(B).

c) Section 22.242.020(A)-(B) of the Los Angeles County Code, providing that "no structure or land shall be used for any purpose, except as specifically provided and allowed by this Title 22," and "[n]o person shall use or permit to be used any structure or land … except in accordance with the provisions of this Title 22."  As discussed in Paragraphs 26-34 and 112-120 herein, the operative CUP for the Landfill details the conditions under which the Landfill may be operated under Title 22.  The Los Angeles County Department of Regional Planning has already found Defendants in violation of certain conditions of its operative CUP in connection with the Noxious Reaction, as stated in its August 18, 2023 Notice of Violation issued to Defendant CHIQUITA CANYON, LLC, as described in Paragraph 94, *supra*, and Plaintiffs herein allege additional continuing violations of the CUP as stated in Paragraphs 112-120, 144 and 155(b).  As a result, Defendants, and each of them, are in violation of Los Angeles County Code section 22.242.020.

d) Section 22.242.030(A) of the Los Angeles County Code, providing that "[e]very person violating any condition or provision either of this Title 22, permit, or approval thereto, is guilty of a misdemeanor, unless such violation is otherwise declared to be an infraction…  Each violation is a separate offense for each and every day during any portion of which the violation is committed."  As stated in Paragraphs 112-120, 144 and 155(b), Defendants are in violation of several provisions of the CUP which governs the operation of the Landfill, and, therefore, are in violation of Los Angeles County Code section 22.242.030(A).  Moreover, Condition 20 of the CUP provides that "any person violating a provision of this grant is guilty of a misdemeanor, pursuant to Section 22.60.340 of the County Code" [now Section 22.242.030(A)].

COMPLAINT

156.   The County is informed and believes, and based thereon alleges, that Defendants, and each of them, act in present in violation of each of the above sections of the Los Angeles County Code, and, unless enjoined and restrained by this Court, will continue to do so in the future.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs pray for judgment against all Defendants on the proceeding Causes of Action as follows:

1.   For an injunction ordering Defendants to bring the Landfill into compliance with the Los Angeles County Code, the operative CUP, and all applicable laws and regulations of the various local, state, and federal regulatory entities, including by performing all necessary corrective measures to contain and extinguish the Noxious Reaction, prevent noxious odors and toxic gases from reaching any residential zone, and eliminate leachate seep;

2.   For an injunction requiring Defendants to subsidize the relocation of citizens living in proximity to the Landfill and who are affected by the Noxious Reaction;

3.   For an injunction requiring the Defendants to subsidize the remedial measures citizens living, working, or studying in proximity to the Landfill and who are affected by the Noxious Reaction are required to take to mitigate the effects they are suffering, including but not limited to air purifier and filtration systems, double paned windows, home hardening, and assistance with utility bills, until such time as the Noxious Reaction is extinguished;

4.   Alternatively, in the event that Defendants fail to or are incapable of abating the violations at the Landfill, that this Court appoint a receiver to take possession and control of the Landfill to bring it into compliance with the Los Angeles County Code, the operative CUP, and all applicable laws and regulations of the local, state, and federal regulatory authorities, and to recover the costs from Defendants, their successors or assigns, for such work;

5.      For civil penalties against Defendants, and each of them, pursuant to Los Angeles County Code section 1.23.090 – which provides that "[a]ny person who causes, maintains, or permits to be caused or maintained a public nuisance on any property shall be liable for a civil penalty for each day or part thereof that said public nuisance occurs," and authorizes the County Counsel to seek the recovery of such penalties in a civil proceeding for abatement, removal, or enjoinment of any public nuisance, pursuant to Los Angeles County Code section 1.23.060 – for their causation and maintenance of a public nuisance for each day or part thereof that said public nuisance occurs, in an amount according to proof;

6.      For civil penalties against Defendants, and each of them, pursuant to California Business and Professions Code sections 17206(a) – which provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California … by a county counsel of any county within which a city has a population in excess of 750,000[,]" and that "[t]he court shall impose a civil penalty for each violation of this chapter" – for each act of unlawful conduct engaged in by Defendants, and each of them, in an amount according to proof;

7.      For attorneys' fees and costs of suit as permitted by law, including as permitted under Los Angeles County Code's Nuisance Abatement Ordinance, section 1.23.080; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    8.    For such other and further relief as the Court deems just and proper.

2

3    DATED: December 16, 2024        MEYERS NAVE

4

5

6                                    By:    /s/ Deborah J. Fox
                                            DEBORAH J. FOX
7                                           JENNY L. RIGGS
                                            CATHERINE L. CARLISLE
8                                           Attorneys for Plaintiffs
9                                           THE PEOPLE OF THE STATE OF
                                            CALIFORNIA and THE COUNTY OF
10                                          LOS ANGELES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49
COMPLAINT

1    **DEMAND FOR JURY TRIAL**

2    Plaintiffs demand a trial by jury of all issues so triable in this action.

3

4    DATED:  December 16, 2024          MEYERS NAVE

5

6

7                                        By:    /s/ Deborah J. Fox

8                                            DEBORAH J. FOX
                                             JENNY L. RIGGS
9                                            CATHERINE L. CARLISLE
                                             Attorneys for Plaintiffs
10                                           THE PEOPLE OF THE STATE OF
                                             CALIFORNIA and THE COUNTY OF
11                                           LOS ANGELES

12   5826767

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT