Dawyn R. Harrison, County Counsel (SBN: 173855)
Scott Kuhn, Assistant County Counsel, (SBN: 190517)
Dušan Pavlović, Senior Deputy County Counsel (SBN: 228509)
Caroline K. Castillo, Deputy County Counsel (SBN: 236987)
OFFICE OF THE COUNTY COUNSEL
648 Kenneth Hahn Hall of Administration
500 West Temple Street
Los Angeles, California 90012-2713
Telephone: (213) 974-1811
Facsimile: (213) 626-7446

Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
Jenny L. Riggs (SBN: 204417)
jriggs@meyersnave.com
Catherine L. Carlisle (SBN: 298316)
ccarlisle@meyersnave.com
Seena M. Samimi (SBN: 246335)
ssamimi@meyersnave.com
MEYERS NAVE
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Plaintiffs
THE PEOPLE OF THE STATE OF
CALIFORNIA and THE COUNTY OF LOS
ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, by and through Dawyn R. Harrison, County Counsel for the County of Los Angeles, and THE COUNTY OF LOS ANGELES,<br><br>        Plaintiffs,<br><br>    v.<br><br>CHIQUITA CANYON, LLC, a Delaware limited liability company; CHIQUITA CANYON, INC., a Delaware corporation; WASTE CONNECTIONS US, INC., a Delaware corporation; and DOES 1-50, inclusive,<br><br>        Defendants. | Case No. 2:24-cv-10819-MEMF (MARx)<br><br>Related Case: 2:23-cv-08380-MEMF (MARx)<br><br>**PLAINTIFF COUNTY OF LOS ANGELES' OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION [ECF NO. 71]**<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>Trial Date:      None Set |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................4

II. LEGAL STANDARD .............................................................................................................5

III. ARGUMENT ..........................................................................................................................5

    A. Defendants' Arguments Supporting Their Request to Delay this Motion Do Not Withstand Scrutiny ..........................................................................................5

        1. Defendants Have Been in Possession of Virtually All of the Evidence Submitted With the Motion for Months or Years .......................5

        2. Defendants Have Command of the Facts and Can Timely Prepare A Response to the Motion ..............................................................................8

        3. Further Delays Would Prejudice the County and Neighboring Residents ....................................................................................................9

    B. Defendants' Request for Expedited Discovery Should Be Denied ........................10

        1. The Discovery Requests are Overbroad ..................................................10

        2. The Purpose of the Requested Discovery is Delay .................................14

        3. The Burden on the County to Comply with the Requests is Disproportionate to the Needs of Discovery .............................................14

        4. Any Discovery Granted Here Should Count Against Defendants' Totals .........................................................................................................15

IV. CONCLUSION .....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
    624 F.3d 1253, 1259 (9th Cir. 2010) ............................................................................ 9

*Am. LegalNet, Inc. v. Davis*,
    673 F. Supp. 2d 1063 (C.D. Cal. 2009) .................................................................. 10, 14

*Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
    146 F.3d 1071 (9th Cir.1998) ..................................................................................... 10

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
    883 F. Supp. 488 (C.D. Cal. 1995) ........................................................................ 5, 11

*Sec. and Exch. Comm'n v. Yin Nan Wang*,
    No. CV 13-7553-JAK (SSx) 2013 WL 12358632 (C.D. Cal., Oct. 23, 2013) ........... 15

*XR Commc'ns, LLC v. Ruckus Wireless, Inc.*,
    No. CV 17-02961 AG, 2017 WL 6048895 (C.D. Cal. Aug. 10, 2017) ...................... 5

**Rules**

Local Rule
    7-8 ......................................................................................................................... 10, 14
    37-3 ............................................................................................................................ 11

## I.  INTRODUCTION

Defendants apply to this Court *ex parte* requesting that this Court delay hearing on the County's pending Preliminary Injunction Motion for several months, all while residents near the Landfill continue to endure the unrelenting, putrid odors released by the Landfill with no relief in sight.  It bears emphasis that Defendants are well-represented in this action, with a team of at least eight attorneys at two law firms in four jurisdictions, including multiple out-of-state attorneys admitted *pro hac vice*.  While Defendants raise a host of excuses for their request for delay, they fail to provide much in the way of facts to support their *ex parte*.  The lack of detail is telling.  Nearly all of the exhibits and evidence offered by the County in support of its Preliminary Injunction Motion are – and have been for years – documents and information known to and in the possession of Defendants and their experts.

Defendants argue repeatedly that because the evidence in support of the Motion is "more than 3000 pages" [DKT 71, ID 5601], they require more time to prepare an opposition.  Defendants do not disclose to the Court the key fact that those pages consist primarily of documents with which Defendants are well-familiar – the permits governing their operations, for example, or the Stipulated Abatement Orders negotiated by the attorneys representing them in this action (which alone constitute 527 pages of the 3,000 pages submitted [DKT 63, ID 3204-3734]).  Simply put, Defendants and their lawyers have had months or years to review and analyze much of this information, a fact that they carefully avoid discussing.  Instead, Defendants' *ex parte* seeks authority to take broad, early discovery on issues where Defendants themselves are largely the most knowledgeable parties and already have access to the most data and information, or that are not relevant to the pending Preliminary Injunction Motion.  This is not proper grounds to delay the hearing on the Motion.

To keep the matter on track, the County made a reasonable proposal to Defendants: additional time for briefing and a protective order to allow disclosure of the limited Personally Identifiable Information not already in Defendants' possession that was analyzed in the Declaration of Harold Campbell to determine those residents most impacted by the nuisance at the Landfill.  Defendants opted instead to seek *ex parte* relief from this Court.  [DKT 60-1, ID 2551.]

Given their familiarity with the evidence and the issues, briefing the opposition in three weeks to allow the matter to stay on track is a reasonable compromise. The County therefore requests that the Court deny the *ex parte* application, and preserve the July 17, 2025 hearing date for the Motion.

## II. LEGAL STANDARD

*Ex parte* applications, by which moving parties seek "to go to the head of the line in front of all other litigants and receive special treatment," are "rarely justified." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). In 1995, this Court noted that "[e]x parte applications have reached epidemic proportions in the Central District." *Id*. at 489. "Now, nearly three decades since Judge Rymer's original discussion, the Central District continues to be plagued by the excessive and unnecessary use of ex parte procedures." *XR Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. CV 17-02961 AG (JCGx), 2017 WL 6048895, at *1 (C.D. Cal. Aug. 10, 2017).

## III. ARGUMENT

### A. Defendants' Arguments Supporting Their Request to Delay this Motion Do Not Withstand Scrutiny

Even apart from their request to take broad discovery (discussed below), Defendants advance several arguments regarding why this Court should delay hearing on the Motion. But these arguments are advanced at a high level only, because the facts cut against Defendants. Defendants have failed to justify their request for delay.

#### 1. Defendants Have Been in Possession of Virtually All of the Evidence Submitted With the Motion for Months or Years

Defendants repeatedly cite to the voluminous evidence that was submitted with the brief and declarations, and use sheer volume as an excuse to request more time to respond to that evidence. [DKT 71, ID 5601, 5607-12, 5629.] Defendants also claim that their own experts need more time to research and prepare their own declarations in response to this evidence. [DKT 71, ID 5611.] Notably, Defendants provide this Court with no detail about the evidence itself, simply pointing to the number of pages as though that alone were sufficient as an argument. It is not.

Defendants have been in possession of nearly all of the evidence attached to the declarations submitted with the Motion for quite some time. For example, the evidence submitted consists of letters to and from the Landfill over the last two years, including reports generated by the Landfill or photos of the Landfill (634 pages); Notices of Violation to the Landfill, and various inspection or violation reports, compliance orders, the Imminent and Substantial Endangerment Order, and various Stipulated Orders for Abatement, in which the Landfill was represented by attorneys for Defendants here (1,975 pages); the Landfill's permits (72 pages); with the remaining documents largely consisting of pages from Defendants' website, odor survey results, other publicly available documents, real estate listings, etc. Indeed, had Defendants identified the documents with which they are unfamiliar – that would constitute only between a hundred and a hundred and fifty pages at most, including the real estate listings offered to show reasonable rental rates for the relocation fund. Thus, Defendants pointed only to the number of pages, rather than their content, to argue they require more time to become familiar with evidence they already have.

These facts also demonstrate that Defendants are quite familiar with the problems at the Landfill. Defendants are the owners/operators of the landfill facility and Defendants are the ones that have firsthand knowledge of what is occurring at the site. Although Defendants complain about the "highly technical nature of the subject matter" [DKT 71, ID 5610], Defendants themselves have the expertise and experience to understand the factual background and circumstances related to the Landfill. This is not a novel area of concern that Defendants will just now have to "research" before they can "prepare a response." To the contrary: Defendants have been in possession of the relevant evidence related to the Landfill for some time, and even submitted many of these same documents in their voluminous Request for Judicial Notice in support of their motion to dismiss this action. [DKT 33, ID 129-131; DKT 33-1, ID 132-166; DKT 33-2, ID 168-175; DKT 33-3, ID 177-509; DKT 33-4, ID 511-513; DKT 33-5, ID 515-865; DKT 33-6, ID 867-871; DKT 33-7, ID 873-876; DKT 33-8, ID 878-1192; DKT 33-9, ID 1194-1296; DKT 33-10, ID 1298-1314; DKT 33-11, ID 1316-1346; DKT 33-12, ID 1348-1479; DKT 33-13, ID 1481-1689, DKT 33-14, ID 1691-1785; DKT 33-15, ID 1787-1826; DKT 33-16, ID 1828; DKT 33-17, ID 1832; DKT 33-18, ID 1833-1851.]

Defendants also argue that in light of the volume of evidence offered in support of the Preliminary Injunction Motion, their experts will need additional time to come up to speed. Nonsense. These same experts presumably have been assisting Defendants with regard to their response to the reaction over the last two years, including helping to review the technical issues and response to the various compliance orders, abatement orders, and other notices of violation that have been issued to the Landfill due to the unmitigated nuisance. In other words, their experts are presumably already up to speed.

Defendants admit that the "Landfill is experiencing an elevated temperature landfill (ETLF) event, or a 'reaction' … which has resulted in elevated temperatures and increased generation of landfill gas and leachate (liquids produced by a landfill)." [DKT 61, ID 2606.] Defendants similarly admit that "[t]he source of any odors coming from the Chiquita Canyon Landfill is an increase in the production of landfill gas (LFG) and liquids at the landfill." [DKT 61, ID 2611.] Moreover, "Chiquita fully recognizes that neighboring communities are suffering odor-related impacts as a result of the reaction…. [T]he study by the Department of Public Health states, and Chiquita recognizes, that odors may cause short-term health impacts or may otherwise affect quality of life." [DKT 61, ID 2600.] The issues presented by the Motion are not technical or beyond Defendants' knowledge or expertise, and they do not require extensive discovery or justify these significant delays.

Defendants have identified nothing new in the Preliminary Injunction Motion other than the remedy sought, and they do not argue that their experts must assist with those legal issues. Instead, Defendants suggest that a "multi-day hearing June regulatory hearing" (much of which concluded on June 4, 2025, with two additional dates set later in June) would interfere with Defendants' ability to bring their experts up to speed. Defendants have provided no specific information regarding how that hearing would interfere with their experts' work.[1] But as the County previously offered, additional briefing time would resolve any issue. Moreover, allowing

---

[1] The County understands that Defendants' experts submitted declarations some time back for this hearing, and that any ability to offer live testimony is sharply limited by the hearing rules. It is perhaps for this reason that Defendants offer no specifics in support of this argument.

Defendants to delay actions in this Court simply because it must also answer to various regulatory agencies will result in repeated and significant delay. Given that the subsurface reaction continues to grow, uncontrolled, it is apparent that the regulatory agencies must push forward to obtain Defendants' compliance. This Preliminary Injunction Motion is thus necessary to protect the public while Defendants attempt to gain control over the odors. Delays in this Court while Defendants attend other hearings simply increases the impact on the community. The Preliminary Injunction Motion need not be delayed several months to accommodate this.

### 2. Defendants Have Command of the Facts and Can Timely Prepare A Response to the Motion

Although Defendants already had nearly all of the documents submitted by the County (and have in fact generated many of them themselves), the County suggested a slightly altered briefing schedule to accommodate Defendants' concerns. [DKT 71, ID 5609.] Defendants have a large and experienced team, including lawyers that have and are representing Defendants before the various regulatory agencies. Other than pointing to the raft of evidence supporting the County's Preliminary Injunction Motion, Defendants have not suggested that their attorneys could not muster a response in the time allotted.

It bears repeating that this is a Motion where the essential facts and law are not particularly complex, and are well-known to Defendants. Again, although the science behind the chemical reaction is technical in nature (and is described in some of the agency declarations), this technical information is both known to Defendants and not essential to the adjudication of the County's Motion. Rather, the Court is being asked to determine simply whether the County is likely to prevail on the merits of its claim that Defendants are maintaining a nuisance (including a nuisance *per se*), and whether there is irreparable harm to the community and the County during the pendency of the litigation if the parties are not returned to their positions before the nuisance began.[2]

---

[2] Although it is beyond the scope of the *ex parte* application, Defendants also mischaracterize the County's motion as a mandatory injunction. It is not. It simply requests that the Court put the

### 3. Further Delays Would Prejudice the County and Neighboring Residents

Defendants contend that because the County brought its Motion after the reaction at the Landfill tripled in size, and after Defendants terminated their Community Relief Program, this Court should believe that the County improperly delayed bringing this Motion. To the contrary: the County moved forward when it became plain that Defendants would not voluntarily mitigate the nuisance.

Defendants' cancellation of their voluntary relief program at the end of February 2025 left community members without assistance in mitigating the harmful odors from the Landfill. [DKT 71, ID 5615.] Defendants' narrative, on the contrary, attempts to rewind the story back to the onset of the chemical reaction, suggesting that the County should have sought injunctive relief at some unspecified earlier time. Defendants suggest as well that there is somehow no urgency to the pending Preliminary Injunction Motion, in large part because the local community has already suffered for several years with the Landfill's odors.

Defendants admit that if there is "prejudice to the adverse party," this could serve to block *ex parte* "requests for extensions of time" [DKT 71, ID 5610, citing *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010).] Here, there is substantial prejudice to the County (and the People of the State of California) with every day that passes, because "Chiquita recognizes[] that odors may cause short-term health impacts or may otherwise affect quality of life." [DKT 61, ID 2600.]

Related, Defendants also suggest that this Court's Civil Standing Order, which sets a 42-day notice period for preliminary injunction motions, should be cast aside in favor of a form of "equal time" requirement, claiming that Defendants should have at least as long to oppose a motion as a party had to bring it. But in litigation it is the filing of the motion itself that dictates the remaining briefing schedule for the opposition and the reply. The Civil Standing Order of this

---

parties back in the places they were before the reaction began and the resulting odors permeated the community's outdoor spaces. As such, it is a prohibitory injunction.

Court is a typical example of this. "It is well established that '[d]istrict courts have inherent power to control their docket.'" *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir.1998). Where, as here, Defendants have raised no cognizable grounds to delay hearing on the Motion, the *ex parte* application should be denied.

### B. Defendants' Request for Expedited Discovery Should Be Denied

Despite their deep familiarity with the evidence submitted in support of the County's Preliminary Injunction Motion, Defendants have attempted to characterize their proposed discovery as somehow "narrow." [DKT 71, ID 5614]. Defendants have proposed six 5-hour depositions, including that of a third-party who did not even submit a declaration in support of the Motion, as well as extensive written discovery to the County and to third parties.

The five factors used to determine whether early discovery is appropriate weigh in favor of the County, as discussed below. Moreover, the procedures set forth in LR 7-8 are more than sufficient for Defendants to fully defend against the Motion, and Defendants have not shown otherwise.

#### 1. The Discovery Requests are Overbroad

Defendants' proposed discovery requests are unacceptably broad. *See Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066-67 (C.D. Cal. 2009) (breadth is second factor in the 5 factor test). Defendants incorrectly claim that they seek "laser focused" discovery on only two categories of inquiry: "(1) the statements in the declarations, including what did and did not go into making them; and (2) what the County and the resident declarants did with the over $25 million in Relief Funds that Defendants have already given them." [DKT 71, ID 5614.] The first category, of course, sweeps in the entire history of the Landfill, including all the background facts set forth from years past. And the second category simply is not relevant.

Defendants provide some detail regarding what they intend to elicit from each witness at deposition, but their high-level assessment simply shows how broad their discovery requests are, particularly when considered in light of Defendants' deep historical knowledge about the Landfill. None of these depositions are warranted.

- *Harold Campbell, PhD, Chief Data Officer of the Los Angeles County Department of Public Health* and
- *Muntu Davis, MD, MPH, Health Officer of the Los Angeles County Department of Public Health*

The main information Defendants seek from these two witnesses is the underlying raw data used to support their conclusions that residents have complained about the odor from the Landfill. But as acknowledged by Defendants, the County has already agreed to provide certain underlying data subject to an executed protective order. [DKT 71, ID 5618-19.] Had Defendants signed the protective order, this matter already could move forward. Defendants' own delay in returning the protective order cannot be the basis to seek this relief from the Court on an *ex parte* basis. *Mission Power Eng'g Co.*, 883 F. Supp. at 492 ("it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."); LR 37-3 (moving party must show "irreparable injury or prejudice not attributable to the lack of diligence of the moving party."). Once Defendants get the underlying documents and data supporting these declarations, there is no additional purpose served by deposing witnesses.[3]

- *Mark DeBie, Deputy Director of the Division of Waste Permitting for Compliance & Mitigation at CalRecycle;*
- *Elizabeth Berg, Deputy Director of California's Department of Toxic Substances Control;* and
- *Amanda Sanders, South Coast Air Quality Management District Air Quality Analysis & Compliance Supervisor*

---

[3] To avoid unnecessarily burdening the Court, in addition to offering the requested data under a protective order, the County offered to produce Dr. Campbell, the Chief Data Officer who analyzed South Coast AQMD complaints giving rise to Notices of Violation to determine the households bearing the brunt of the odor nuisance at the Landfill, for an hour of deposition. Defendants declined.

Defendants seek to depose these three witnesses regarding the data that supports their conclusions,[4] and cross-examine them regarding the content of their declarations. To show why this is overbroad and unhelpful to the Court's adjudication of the Motion, it is worth examining Defendants' arguments regarding these issues in greater detail. Defendants contend that they seek discovery from these witnesses to "dispute the County's arguments that the reaction at the Landfill is expanding." [DKT 71, ID 5620.] It is true that the Motion and declarations attach evidence demonstrating that the reaction has been expanding, which was referenced among other things in the Imminent and Substantial Endangerment ("ISE") order issued by California's Department of Toxic Substances Control on April 1, 2025. [DKT 62-1, ID 3011.] This evidence was presented as background information for the Court to understand that this subsurface chemical reaction is not an issue that will simply disappear one day soon, that the public nuisance persists, and to show the need for the temporary relocation of residents.

But even if the County were to agree *arguendo* that every regulatory agency that has examined the issue is somehow mistaken, and the reaction is not expanding (the County makes no such concession), it would make no difference as to whether or not the County is entitled to temporary relief. Defendants do not dispute that the reaction exists, it creates unhealthy and unpleasant odors, and that this can cause health effects in the nearby community. [DKT 61, ID 2600, 2606, 2611.] Even if Defendants can somehow show that the reaction is only 30-45 acres (rather than current 90 acres), this has no impact on whether the County is likely to prevail on the merits of its nuisance claim, or whether there is irreparable harm from the existing odors. Therefore, one of the key issues about which Defendant seeks discovery will not assist the Court's assessment of this Motion, and imposing this broad early discovery is disproportionate to the needs of the case. Such discovery would only serve to delay the case.

---

[4] Defendants also seek to depose Todd Thalhamer, P.E., a witness whose declaration the County did not even present in its Motion. Defendants argue that they must depose Mr. Thalhamer because he analyzed some data relating to the Landfill; but this is specious. Mr. Thalhamer largely analyzed Defendants' own data and reports, and there is no utility to be gained from his deposition on an expedited basis when it is not related to the Motion.

- *Individual Plaintiffs*

Defendants also seek to depose the three individual plaintiffs whose declarations were submitted with the Motion, supposedly to test their health claims, quality of life claims, and what they did with the money they received from prior relief funds administered by Defendants. [DKT 71, ID 5622.] This proposed discovery is overbroad and unlikely to impact the Court's analysis of the Motion. Whether or not Defendants can successfully poke holes in the health and quality of life claims of three individuals who live near the Landfill does not affect the overarching public nuisance claim presented in the Motion. Those three individuals simply present representative examples of the big picture public nuisance that Defendants have caused throughout the wider community.

Furthermore, how those individual plaintiffs used their relief funds in the past is irrelevant to the pending Motion for two reasons. First, plaintiffs were free to use those voluntary relief funds that were provided and administered by Defendants for any reason, including to pay utility bills to mitigate higher energy costs from keeping windows closed, etc. Secondly, the relief sought through the Motion is specific, and funds will only be used for temporary relocation or home hardening for eligible residents.[5] As such, how funds were used in the past has no bearing on how they will be used should the Motion be granted.

Finally, Defendants seek written discovery (document requests and interrogatories) from the County to ascertain what has been done with prior funds. [DKT 71, ID 5623.] Although Defendants are welcome to include this in the interrogatories or requests for production that will be propounded under the discovery plan, Defendants have identified no need for expedited discovery on this question in connection with this Motion. Any fund created as a result of the Motion will be specifically administered to provide relocation relief and home hardening only, as set forth in the Motion, so allocation of prior funds is irrelevant.

---

[5] Should the Court grant the requested relief, any resulting relief fund would necessarily include protocols and safeguards for the administration. How Defendants administered their now-defunct Community Relief Program is simply irrelevant to this Motion.

### 2. The Purpose of the Requested Discovery is Delay

As noted above, because Defendants are already in possession of the vast majority of the evidence that has been submitted with the Motion and Defendants' proposed discovery is largely unnecessary to determination of the Motion, there is no substantive need for the expedited discovery. Defendants are the ones with the specialized knowledge about the operations of the Landfill. The issues about which Defendants seek discovery (discussed above) are not particularly relevant to the Court's adjudication of the merits of the Motion in any event. As such, the only reason for Defendants' discovery request is to delay the Motion. *See Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1066-67 (purpose of discovery is third factor in the 5 factor test).

The County has offered Defendants additional time to brief the case, offered a draft protective order that would allow Defendants to review the underlying South Coast AQMD complaint data with its attendant Personally Identifiable Information, and offered a one hour deposition of a witness regarding the data. Fox Decl., ¶ 2 & Exh. A. Had Defendants accepted this offer, Defendants would not only have sufficient time to brief the Motion, but would have had the opportunity to take some limited discovery in a time frame that would keep the matter on track. Their decision to pursue instead the broad discovery requested here shows that delay is the goal.

### 3. The Burden on the County to Comply with the Requests is Disproportionate to the Needs of Discovery

The bulk of the discovery sought on an expedited schedule is directed at third parties, who have all already agreed to be available for hearing on July 17, 2025, should Defendants pursue the course offered by LR 7-8. Even though Defendants have argued that LR 7-8 is not the exclusive mechanism to examine a declarant, and that it does not act as a bar to the grant of expedited discovery [DKT 71, ID 5624], Defendants have not made any showing as to why the LR 7-8 procedures are not sufficient here. Nor could they: Defendants have been in possession of the relevant documents for months or even years, and are intimately familiar with them due to their engagement with the regulatory agencies to negotiate and implement the mitigation measures therein. Moreover, as discussed above, much of the discovery sought by Defendants is not relevant to the hearing (or if there is some relevance, Defendants have yet to identify it). The third

parties that provided testimony and evidence in support of the Motion will largely bear the burden of Defendants' proposed discovery, and should Defendants' request to the delay the Motion be successful, the residents near the Landfill will be similarly burdened.

### 4. Any Discovery Granted Here Should Count Against Defendants' Totals

In additional to seeking broad, expedited discovery, Defendants contend that any later discovery should not be limited by any discovery granted here – potentially requiring third parties to sit for multiple depositions, and requiring parties to submit to unnecessary discovery. Defendants cite to *Sec. and Exch. Comm'n v. Yin Nan Wang,* No. CV 13-7553-JAK(SSx)) 2013 WL 12358632, * 2 (C.D. Cal., Oct. 23, 2013) for the proposition that "depositions shall not count against the limits on the number and duration of depositions set forth in the Federal Rules of Civil Procedure." [DKT 71, ID 5613, 5616.] But that case actually supports the County's position, not Defendants. There, the SEC was the plaintiff (in a similar position to the County here), and sought expedited discovery "to develop additional evidence regarding the Defendants' wrongdoing and to ensure that any asset freeze is fully implemented." (*Id*.) The case does not stand for the proposition that Defendants may take unfettered discovery. Instead, the equivalent in this case would be if the Court were to allow the County to conduct discovery to ascertain information from Defendants that could be used in the County's Motion, because it is Defendants, and not the County, who are in the superior position with regard to information about the subsurface reaction and the related nuisance. As such, *SEC v. Yin* does not support Defendants' request to take expedited discovery without impacting the case as a whole.

///
///
///
///
///
///
///
///

## IV. CONCLUSION

Defendants bear a heavy burden to justify the necessity of their requested relief, and they have not met it. Defendants are not entitled to the underlying substantive relief they seek, because their request is largely unnecessary to determination of the pending Motion and is interposed for delay. The application should be denied.

DATED: June 6, 2025                    MEYERS NAVE

By:      /s/Deborah J. Fox
DEBORAH J. FOX
JENNY L. RIGGS
CATHERINE L. CARLISLE
SEENA M. SAMIMI
Attorneys for Plaintiffs
THE PEOPLE OF THE STATE OF CALIFORNIA and THE COUNTY OF LOS ANGELES

6206405

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for County Plaintiffs, certifies that this brief contains 4,414 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: June 6, 2025         MEYERS NAVE

By:      /s/Deborah J. Fox
DEBORAH J. FOX
JENNY L. RIGGS
CATHERINE L. CARLISLE
SEENA M. SAMIMI
Attorneys for Plaintiffs
THE PEOPLE OF THE STATE OF CALIFORNIA and THE COUNTY OF LOS ANGELES